FILED BY ___ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 JUL 22 PM 1:41

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| MICHAEL J. MARKIE, and ELLEN RUBY-MARKIE, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD R. CHASTAIN, <br><br> Defendant. | No. 04-2927 Ma/V |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

This case arises from a May 4, 2004, turkey hunting accident. (Compl. at ¶¶ 6, 13.) Plaintiffs Michael J. Markie ("Markie") and his wife Ellen Ruby-Markie ("Mrs. Markie") bring claims of negligence, res ipsa loquitur, recklessness and gross negligence, and loss of consortium. (Compl. at ¶¶ 17-28.) Before the court is defendant Donald R. Chastain's ("Chastain") Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, filed on December 10, 2004. The Markies filed a response on December 22, 2004. For the following reasons, Defendant's motion to dismiss is DENIED.

I. Background

The Markies, in their Complaint, describe the circumstances of the hunting accident as follows. "In the early morning hours of May

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ___7-25-05___

13

4, 2004, Markie and Chastain went turkey hunting in a swamp bottom in the Wolf River area near Moscow, Fayette County, Tennessee." (Compl. at ¶ 6.) After hearing a "gobbler," Markie and Chastain set up decoys. (Id. at ¶ 8.) After concealing himself near a tree, Markie "gave his signature turkey call, two soft 'clucks' followed by a soft 'yelp.'" (Id. at ¶ 11.) "Immediately upon Markie's giving his turkey call, Chastain turned around in the direction of the decoys and fired his [shot]gun ... in Markie's direction, shooting Markie at close range in the head, neck, chest, and left arm." (Id. at ¶ 12.)

The Markies' Complaint alleges that jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy is greater than $75,000. (Id. at ¶ 4.) It is undisputed that Chastain is a citizen of Tennessee and resides in Germantown, Shelby County, Tennessee. (Id. at ¶ 3.)

Chastain has filed an affidavit alleging that he has personal knowledge that the Markies are citizens of Fayette County, Tennessee. According to Chastain the Markies "live and have lived for the past many years [in] Tennessee.... The vehicles they drive are principally lodged in the State of Tennessee and have Tennessee tags. They hold valid Tennessee driver's licenses. They are registered to vote in Fayette County...." (Chastain Aff. at ¶ 3.) Chastain alleges that the Markies' house in Arkansas is not their

principal residence. (Id. at ¶ 4.) According to Chastain, "Michael Markie told me that the reason the Complaint was being filed in Federal Court, along with the allegation that he lived in the State of Arkansas, was to take advantage of early disclosure requirements which are not found under state law." (Id.)

According to the Markies, when their Complaint was filed on November 17, 2004, they were residents of Leslie, Searcy County, Arkansas. (Markie Aff. at ¶ 1; Mrs. Markie Aff. at ¶ 1.) The Markies claim that, at that time, they intended to continue residing in Arkansas. (Markie Aff. at ¶ 1; Mrs. Markie Aff. at ¶ 1.) The Markies have presented evidence that when their Complaint was filed both Markie and Mrs. Markie had Arkansas driver licenses, their vehicles were registered in Arkansas, and they were registered to vote in Arkansas.[1] (Markie Aff. at ¶ 2, Ex. A, B; Mrs. Markie Aff. at ¶ 2, Ex. A, B.)

The Markies admit that prior to Markie's injury they were citizens of Tennessee. (Markie Aff. at ¶ 3; Mrs. Markie Aff. at ¶ 3.) They allege, however, that Markie's injury caused them to move from Tennessee to their second home in Arkansas:

> [We] previously resided in Tennessee, where our business was located. However, from the time we purchased the home we own in Leslie, Arkansas approximately four and one-half years ago, it has been our intention to reside there permanently. Since the shooting ... my husband ... has

---

[1] The Markies both filed affidavits with photocopies of their Arkansas driver licenses and vehicle registration certificates attached as exhibits. The driver licenses and vehicle registration certificates are dated November 11, 2004.

3

been ... largely incapacitated. Due to the hardship caused by being without his income since he was shot, we cannot continue to bear the expense of maintaining two homes. Since he may never be able to return to his former employment, we have moved where it is cheaper for us to live. Thus, before we filed this lawsuit, we met with a realtor about leasing or selling our home in Fayette County, Tennessee and began and have continued to ready the home for sale; we changed the mailing address on the bills and statement we regularly receive to our address in Arkansas; we filed with the post office a form forwarding all our mail to our address in Arkansas; and we moved, and took with us the bulk of the clothes and possessions we value, to our home in Arkansas, where we have resided on a permanent basis since before this lawsuit was filed.

(Mrs. Markie Aff. at ¶ 3.)

## II. Jurisdiction

Chastain seeks dismissal under Fed. R. Civ. P. 12(b)(1). According to Chastain, this court does not have jurisdiction because no federal claims are involved and the parties are not diverse. (Def.'s Mot. at 1.) The Markies, however, contend that jurisdiction exists because the parties are citizens of different states. (Pl.'s Resp. at 1.)

When a Rule 12(b)(1) motion to dismiss presents a factual controversy, as here, the district court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing [a factual attack on subject matter jurisdiction], a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat. Life Ins. Co. v. U.S., 922 F.2d 320, 325 (6th

4

Cir. 1990). "Where the facts are relatively simple, and substantially uncontroverted, and the law is not complex, ... a district court [is] justified in ruling on a motion under Fed. R. Civ. P. 12(b)(1) without pausing to make findings on disputed questions of fact." Commodities Export Co. v. U.S. Customs Service 888 F.2d 431, 436-37 (6th Cir. 1989) (internal citations omitted).

Under 28 U.S.C. § 1332 "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between citizens of different States." 28 U.S.C. § 1332(a). The plaintiff has the burden of proving jurisdiction in order to survive the motion. Moir v. Greater Cleveland Regional Transit Authority, 895 F.2d 266, 269 (6th Cir. 1990). The plaintiff must prove by a preponderance of the evidence that diversity exists. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

A court must determine the citizenship of a person at the time the plaintiff commences the lawsuit. Ray v. Bird & Son & Asset Realization Co., Inc., 519 F.2d 1081, 1082 (5th Cir. 1975). For diversity jurisdiction purposes, an individual is a citizen of the state in which he is domiciled. Stifel v. Hopkins, 477 F.2d 1116, 1120 (6th Cir. 1973). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." Id.

5

Place of residence is prima facie evidence of domicile. <u>State Farm Mut. Auto. Ins. Co. v. Dyer</u>, 19 F.3d 514, 520 (10th Cir. 1994).[2] Additional "'[i]tems to examine include, but are not limited to, the place where civil and political rights are exercised, taxes paid, real and personal property located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment, whether the party rents or owns his residence, how permanent the living arrangement appears, affiliations with social organizations, locations of the party's physician, lawyer, accountant, dentist, stockbroker, and other service providers.'" <u>Bateman v. E.I. DuPont De Nemours & Co.</u>, 7 F.Supp.2d 910, 912 (E.D. Mich. 1998) (quoting <u>Chappelle v. Beacon Communications Corp.</u>, 863 F.Supp. 179, 181 (S.D.N.Y. 1994)). "Defendant's own statements concerning her intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent." <u>Edick v. Poznanski</u>, 6 F.Supp.2d 666, 669 (W.D. Mich. 1998). "In sum, the Court must use a 'totality of the evidence' approach, and no single factor is conclusive." <u>Id.</u>

The Markies have stated in their sworn affidavits that when the lawsuit was filed they resided in Arkansas and intended to continue residing in Arkansas. Further, their affidavits state that

---

[2] Even if an individual has more than one residence, he may only have one domicile at any one time. <u>Williamson v. Osenton</u>, 232 U.S. 619, 625 (1914).

when the lawsuit was filed they carried Arkansas driver licenses, their cars were registered in Arkansas, they had registered to vote in Arkansas, and they were in the process of selling or renting their home in Tennessee. The Markies have explained that their change in citizenship from Tennessee to Arkansas was motivated by economic necessity because Mr. Markie's injury has left him unemployed and maintaining two homes is impossible.

Chastain has presented little evidence to contradict the Markies' claim that they have changed their domicile from Tennessee to Arkansas. Chastain has presented no evidence contradicting the Markies' claim that they were selling or renting their Tennessee residence when the Complaint was filed. He has provided no evidence contradicting the Markies' claim that they needed to reduce their expenses and maintain only one residence after Markie's injury. Chastain's claim that the "reason" the Markies' Complaint alleges that they are citizens of Arkansas is to gain diversity jurisdiction does not go to the question of whether they were in fact citizens of Arkansas when the Complaint was filed.

The Markies have presented evidence from which the court can conclude that their domicile, and thus their citizenship, when their Complaint was filed was in Arkansas. Although Chastain has presented evidence showing that the Markies were once citizens of Tennessee, he has not presented any substantial evidence disputing their showing that, before the lawsuit was filed, they had moved to

7

Arkansas and intended to remain in Arkansas. The court concludes that the Markies have met their burden of proving by a preponderance of the evidence that they were citizens of Arkansas when this lawsuit was filed.

### III. Conclusion

For the foregoing reasons, the court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction.

So ORDERED this 21st day of July 2005.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 13 in case 2:04-CV-02927 was distributed by fax, mail, or direct printing on July 25, 2005 to the parties listed.

---

John J. Heflin
BOURLAND HEFLIN ALAREZ & MINOR
5400 Poplar Avenue
Ste. 100
Memphis, TN 38119

John Marshall Jones
BOURLAND HEFLIN ALAREZ & MINOR
5400 Poplar Avenue
Ste. 100
Memphis, TN 38119

Robert L. Moore
HEATON & MOORE, P.C.
100 N. Main St.
Ste. 3400
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT